## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 08 B 01548 |
| | ) | Chapter 7 |
| BARRY E. BURKE, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| COLEMICHAEL INVESTMENTS, | ) | Adversary No. 08 A 00252 |
| L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BARRY E. BURKE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of ColeMichael Investments, L.L.C. ("ColeMichael") for judgment on the pleadings against the debtor, Barry E. Burke, ("Burke") on the complaint filed by ColeMichael. The complaint seeks a finding that the debt reflected by a default judgment entered by the District Court of Dallas County, Texas, is not dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). For the reasons set forth herein, the Court denies the motion. This adversary proceeding has been set for trial commencing on May 4, 2009. The Final Pretrial Order previously entered shall remain in full force and effect.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334(a) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. UNDISPUTED FACTS AND BACKGROUND

The following facts are taken from ColeMichael's complaint and from all public records and proceedings to which the parties refer. Many of the facts alleged in the complaint, which were admitted in the answer, are uncontested.

ColeMichael is a limited liability company organized under the laws of the State of Nevada with its principal place of business located in Dallas, Texas. (Compl. ¶ 1; Answer ¶ 1.) Burke is an individual who resides in Lombard, Illinois. (Compl. ¶ 2; Answer ¶ 2.) Burke was admitted to practice law in the State of Illinois in 1976. (Compl. ¶ 4; Answer ¶ 4.) By order of the Illinois Supreme Court, Burke was disbarred on consent on September 21, 2006. (Compl. ¶ 6; Answer ¶ 6.) From his admission until his disbarment, Burke was an Illinois attorney licensed to practice law in the State of Illinois, and admitted to the bars of the Illinois Supreme Court and the United States District Court for the Northern District of Illinois. (Compl. ¶ 5; Answer ¶ 5.)

### A.    The Dallas County Proceedings

In 1998, ColeMichael commenced proceedings against several defendants, including Burke, in the District Court of Dallas County, Texas, Cause No. 98-07667-D (the "Dallas County Proceedings"). (Compl. ¶ 7 & Ex. No. 1.) In the Dallas County Proceedings, the

-3-

original petition and summons were served upon the Texas Secretary of State who then served them upon Burke by certified mail. (Compl. ¶ 9 & Ex. No. 2; Answer ¶ 9.) Burke denies that the original petition and summons were served upon him in accordance with Texas law. (Answer ¶ 8.) A copy of ColeMichael's first amended original petition filed on October 13, 1998, has been submitted to the Court. (Compl. Ex. No. 1.) A copy of the original petition has not been provided to the Court. ColeMichael alleges that the original petition and the first amended original petition were substantively identical. (Compl. ¶ 10.) Burke denies this allegation. (Answer ¶ 10.)

In its first amended original petition, ColeMichael sought to recover damages from Burke and his co-defendants for claims arising out of ColeMichael's investment in a joint venture established to invest in a "high yield capital enhancement strategy" later identified as an "IMF [International Money Fund] Sponsored Enhanced Financial Return Strategy." (Compl. Ex. No. 1 at ¶ 11.) In 1996, Burke required ColeMichael to wire transfer to Burke's client funds account a retainer and an investment in the amount of 300,000 in the "high yield capital enhancement strategy." (Compl. ¶¶ 16 & 17b; Answer ¶¶ 16 & 17b.) The amended original petition alleged the following causes of action against Burke and several other defendants: breach of contract; accounting; fraud; fraudulent inducement; breach of fiduciary duty; legal malpractice; negligence; oppression of a minority venturer; and negligence per se. (Compl. Ex. No. 1.)

Specifically, in the first amended original petition, ColeMichael alleged, among other things, that Burke represented himself to be an international expert in the type of transaction ColeMichael was solicited to invest in (*id.* at ¶ 13); Burke required ColeMichael to retain

-4-

Burke as its attorney (*id.*); Burke made fraudulent misrepresentations to induce ColeMichael

to invest in the transaction, including the representation that because of the "secret

involvement" of the United States government the terms of the agreement were non-

negotiable (*id.* at ¶¶ 14 & 25); and Burke acted as attorney and fiduciary for ColeMichael in

connection with the investment (*id.* at ¶¶ 13-16).  ColeMichael further alleged that Burke

made a series of misrepresentations in order to avoid payment of funds owed ColeMichael

in connection with the investment.  (*Id.* at ¶¶ 10 & 19.)  Burke denies all of the above

allegations set forth in the first amended original petition.  (Answer ¶ 17.)  Burke failed to

appear or file an answer in the Dallas County Proceedings.  (Compl. ¶ 18; Answer ¶ 18.)

On January 7, 1999, the Dallas County District Court entered a default judgment as

to Burke (the "Default Judgment").  (Compl. Ex. No. 3.)  The Default Judgment stated in

pertinent part as follows:

> The Court finds and holds that Defendant Burke was duly
> served with process in the form, manner and within the length
> of time required by law. . . .  Therefore, the Court holds that
> it has jurisdiction over Defendant Burke and the subject
> matter and that the time for filing an answer by Defendant
> Burke has passed. . . .
> The Court has considered the pleadings and evidence
> presented and finds that Plaintiff ColeMichael is entitled to a
> default judgment against Defendant Burke in this cause and
> that all facts contained in Plaintiff's First Amended Original
> Petition are deemed admitted as to Defendant Burke.
> IT IS, THEREFORE, ORDERED, ADJUDGED AND
> DECREED that Plaintiff ColeMichael Investments, LLC,
> have and recover judgment against Defendant Barry E. Burke
> for all causes of action set forth in Plaintiff's First Amended
> Original Petition, and that ColeMichael recover of and from
> Defendant Barry E. Burke the sum of . . . ($21,178,261).

(*Id.* at pp. 1-2.)

-5-

On March 11, 1999, the Dallas County District Court entered a final default judgment

as to defendants Burke, John Bright, and Bayvest Capital Funding Limited (the "Final

Default Judgment"). (Compl. Ex. No. 4.) The Final Default Judgment incorporated the

Default Judgment. (*Id.* at p. 2.) The Final Default Judgment stated in pertinent part as

follows:

> The Court has considered the pleadings and evidence
> presented and finds that Plaintiff ColeMichael is entitled to a
> default judgment against Defendants Burke, Bright, and
> Bayvest in this cause and that all facts contained in Plaintiff's
> First Amended Original Petition are deemed admitted as to
> Bright.
> IT IS, THEREFORE, ORDERED, ADJUDGED AND
> DECREED that Plaintiff ColeMichael Investments, LLC,
> have and recover judgment against Defendants Barry E.
> Burke, John Bright and Bayvest Capital Funding Limited,
> jointly and severally, for all causes of action set forth in
> Plaintiff's First Amended Original Petition, and that
> ColeMichael Investments, LLC recover of and from
> Defendants Barry E. Burke, John Bright and Bayvest Capital
> Funding Limited, jointly and severally, the sum of . . .
> ($21,178,261).

(*Id.* at p. 3.) Burke did not appeal the Final Default Judgment. (Compl. ¶ 26; Answer ¶ 26.)

**B.    The Cook County Proceedings**

**1.    Citation to Discover Assets**

In November of 1999, ColeMichael commenced enforcement proceedings before the

Circuit Court of Cook County, Illinois, Case Number 99 L13268, (the "Cook County

Proceedings") by registering the Final Default Judgment and causing a citation to discover

assets to be served upon Burke. (Compl. ¶ 27; Answer ¶ 27.) ColeMichael's citation to

-6-

discover assets was duly served upon Burke and called for his appearance in answer to the citation on February 22, 2000. (Compl. ¶ 29; Answer ¶ 29.)

Prior to December 28, 1999, Burke, through his counsel, filed a motion to stay enforcement of post-judgment proceedings. (Compl. ¶ 30; Answer ¶ 30.) In the motion to stay, Burke contended that he had not been personally served with the petition in the Dallas County Proceedings and that he intended "to challenge [the Final Default Judgment] in the Texas court which entered it by the filing of a motion to vacate or appropriate petition." (*Id.*) Burke requested that the Cook County Circuit Court stay the enforcement of the Final Default Judgment. (*Id.*) At the hearing held in the Cook County Proceedings on February 29, 2000, all matters, including the motion to stay, were continued for hearing to March 8, 2000, and Burke was ordered to personally appear in court at that continued hearing. (Compl. ¶ 33; Answer ¶ 33.)

On March 8, 2000, Burke filed a voluntary Chapter 7 bankruptcy petition. (Compl. ¶ 34; Answer ¶ 34.) The case was dismissed on April 10, 2000, due to Burke's failure to file schedules as required under Federal Rule of Bankruptcy Procedure 1007. (Compl. ¶ 35; Answer ¶ 35.) Burke was barred from filing another bankruptcy petition without prior leave from the Court for a period of 180 days due to his abuse of the bankruptcy process. (*Id.*)

On April 28, 2000, the Cook County Proceedings were reinstated from the stay in effect as a result of Burke's first bankruptcy, and the case was removed from that court's bankruptcy call. (Compl. ¶ 36; Answer ¶ 36.) On May 5, 2000, the matter was continued by order entered by the Cook County Circuit Court, and Burke was ordered to personally appear in court on May 31, 2000. (Compl. ¶ 37; Answer ¶ 37.) Burke and his counsel of

-7-

record signed an agreed order (the "Agreed Order") to be presented to the Cook County

Circuit Court at the May 31, 2000 hearing. (Compl. ¶ 38; Answer ¶ 38.) The Agreed Order

provided in relevant part:

> By his signature and that of his counsel below, judgment-
> debtor Barry E. Burke hereby withdraws with prejudice his
> previously-filed motion to stay post-judgment proceedings
> (filed when these proceedings were pending under Cause
> Number 99 L 13268), and consents to the validity and
> enforceability, in its entirety and before any court or tribunal
> with jurisdiction over Burke or any asset belonging to Burke
> or to which Burke is or may be entitled, of the Final Judgment
> entered by the District Court of Dallas County, Texas, on
> March 11, 1999, in Cause Number 98-07667-D (the
> "Judgment") for which these registration and enforcement
> proceedings were commenced[.]

(Compl. Ex. No. 6 at ¶ 5.) The Agreed Order further provided:

> Further, by his signature and that of his counsel below,
> judgment-debtor Barry E. Burke, acknowledges, represents
> and warrants that he has the right to receive funds which are
> sufficient to, and from which he will, satisfy the Judgment,
> and that he expects to receive said funds, and satisfy the
> Judgment, prior to the continued citation date of July 6,
> 2000[.]

(*Id.* at ¶ 6.) The Cook County Circuit Court entered the Agreed Order dated May 31, 2000,

and continued the citation proceedings to July 6, 2000. (Compl. ¶41; Answer ¶ 41.)

On November 30, 2000, in order to induce ColeMichael to continue the citation

proceedings, Burke submitted an affidavit in connection with the Cook County Proceedings.

(Compl. ¶¶ 42-43; Answer ¶¶ 42 & 43.) In his affidavit, Burke stated, "I further represent,

warrant, testify, and assure ColeMichael, its counsel and the Court, that I have every

intention of paying, and in good faith believe that I will have the financial ability to pay, the

-8-

Judgment in full together with all accrued interest no later than Jan[uary] 31, 2001." (Compl. Ex. No. 7 at ¶ 5.) Based upon Burke having submitted his affidavit pursuant to the Agreed Order, the Cook County Circuit Court continued the citation proceedings. (Compl. ¶ 44; Answer ¶ 44.)

On July 8, 2003, Burke was ordered by the Cook County Circuit Court to appear and show cause as to why he should not be held in contempt of court for failing to comply with a prior order of that court directed to the production of responsive materials. (Compl. ¶ 45; Answer ¶ 45.) On August 25, 2003, at a hearing in connection with those show cause proceedings, Burke produced a warranty deed, signed by Burke and his wife on September 2, 2002, while the citation was pending in the Cook County Proceedings. (Compl. ¶ 46; Answer ¶ 46.) The deed transferred title to Burke's residence from Burke and his wife as "joint tenants" to themselves as "tenants by the entirety." (Id.)    On August 26, 2003, ColeMichael moved the Cook County Circuit Court to set aside this conveyance, arguing that the conveyance was an attempt to place Burke's asset beyond the process of the Cook County Circuit Court. (Compl. ¶ 47; Answer ¶ 47.) On January 16, 2004, the Cook County Circuit Court granted ColeMichael's motion. (Id.)

### 2.    Contempt Orders

On October 16, 2003, ColeMichael requested from the Cook County Circuit Court an order of contempt arising from Burke's failure to comply with that court's orders and his failure to justify or support his prior representations to the court. (Compl. ¶ 48; Answer ¶ 48.) On June 30, 2004, the Cook County Circuit Court held an evidentiary hearing in connection with the contempt proceedings. (Compl. ¶ 49; Answer ¶ 49.) At that hearing,

-9-

Burke testified that he reviewed and signed the Agreed Order. (Compl. Ex. No. 8 at pp. 27-28; Compl. ¶ 51; Answer ¶ 51.) Burke also testified that by his signature he represented and consented to the validity and enforceability of the Default Judgment entered in the Dallas County Proceedings. (*Id.*)

On October 21, 2004, the Cook County Circuit Court entered a Memorandum Decision and Order adjudging Burke to be in indirect civil contempt and direct criminal contempt of court. (Compl. ¶ 52; Answer ¶ 52.) In its Memorandum Decision and Order, the Cook County Circuit Court found that, "[o]n March 11, 1999, the District Court of Dallas County, Texas, entered final judgment against Burke and in favor of ColeMichael in an ex-parte proceeding in the amount of $21,178,261.00. . . . Before this Court, Burke has conceded the validity and enforceability of this Judgment." (Compl. Ex. No. 9 at ¶ 2.) The Cook County Circuit Court also made the following findings:

> The Court expressly finds that the representation made in the Agreed Order of May 31, 2000, that Burke had an existing right to receive funds sufficient to enable him to satisfy the Judgment, was false, and knowingly so.
> The Court further expressly finds Burke's representation, warranty and testimony, made to this Court under oath in the affidavit he submitted on November 30, 2000, that he had a good faith basis for believing that he would have the financial ability to pay the Judgment, together with all accrued interest, no later than January 31, 2001, was false, and knowingly so.
> The Court further expressly finds that the statement made in open court on April 16, 2004, that Burke's prior representations regarding a right to receive funds sufficient to satisfy the Judgment were premised upon a written contract, were false, and knowingly so.
> The Court further expressly finds that the representation made by Burke at the May 28, 2004, hearing, that he was entitled to commission income from an imminent sale, was false, and knowingly so.

Burke has offered no reason for the purported 2002 transfer
of his interest in real property to "tenancy by the entirety,"
other than an attempt to frustrate his creditors (specifically,
ColeMichael), violate the pending citation to discover assets
and place his assets beyond the reach of the enforcement
powers of the Court.

Burke has admitted that he knew, at the time of the 2002
transfer, that one of the effects of the purported transfer would
be to place the assets beyond the reach of his creditors and the
enforcement powers of the Court. He further admitted that he
knew that the Court's proceedings were ongoing at the time
he made the purported 2002 transfer of real estate.

Accordingly, the Court further expressly finds that the
purported 2002 transfer by Burke of his interest in real estate
was undertaken by him solely in an attempt to avoid paying
the debt reflected by the Judgment, and place the subject real
estate beyond the enforcement powers of this Court. Said
transfer was also in direct violation of this Court's citation....

The evidence and testimony show that Burke has produced no
contract or other document which supports the representation
that he had an existing right in 2000 to receive funds which
would enable him to satisfy the Judgment.

In short, the Court finds the Burke has deliberately and
repeatedly lied to the Court, engaged in a continuing and
contumacious pattern of disregard for the Court's direct
orders, and attempted to frustrate the intended process of the
Court.

The aforesaid conduct by Burke was knowing and willful, an
affront to the dignity and integrity of this Court, and an effort
to obstruct justice. This conduct is made particularly
egregious by the fact that Burke is an Illinois attorney and an
officer of this Court.

(*Id.* at ¶¶ 42-51; Answer ¶ 53.) (citations omitted).

The Court ordered Burke "to pay all reasonable attorneys' fees and expenses incurred

by ColeMichael in these enforcement proceedings since May 31, 2000, in an amount to be

determined at a subsequent hearing upon ColeMichael's petition[.]" (Compl. Ex. No. 9 at

p. 29 ¶ 4.) The matter was continued for Burke to appear in court to begin his incarceration

-11-

for the civil contempt on October 28, 2004. (*Id.* at p. 29 ¶ 5.) Burke did not appeal the Cook County Circuit Court's Memorandum Decision and Order. (Compl. ¶ 55; Answer ¶ 55.)

On November 28, 2006, the Cook County Circuit Court again found Burke to be in contempt of court for having made willful and contumacious misrepresentations to the court. (Compl. Ex. No. 10; Compl. ¶ 58; Answer ¶ 58.) The court ordered Burke incarcerated in the Cook County jail for a period of six months. (*Id.*) The matter was continued for status to May 22, 2007. (Compl. Ex. No. 10 at ¶ 12.) Burke filed a notice of appeal from the second finding of contempt. (Compl. ¶ 59; Answer ¶ 59.) On January 8, 2008, that appeal was dismissed for want of prosecution by the Illinois Appellate Court for the First District. (Compl. Ex. No. 11; Compl. ¶ 59; Answer ¶ 59.)

On January 24, 2008, Burke filed a second voluntary Chapter 7 bankruptcy petition. Thereafter, on May 5, 2008, ColeMichael filed the instant four-count complaint. Count I alleges that Burke is collaterally estopped from re-litigating the issue of non-dischargeability of the Final Default Judgment under § 523(a)(2)(A), (a)(4), and (a)(6) because these issues were litigated and decided in the Dallas County Proceedings and the Cook County Proceedings. Specifically, ColeMichael alleges that Burke had a full and fair opportunity to participate in the Dallas County Proceedings and the Cook County Proceedings and to litigate the issues raised therein. ColeMichael further alleges that the Dallas County Proceedings and the Cook County Proceedings involved the same parties and issues as this proceeding. ColeMichael argues that the Final Default Judgment was a final judgment on the merits and that Burke conceded to its validity in the Cook County Proceedings. Alternative to the relief requested in Count I, ColeMichael requests relief under §

-12-

523(a)(2)(A) (Count II); § 523(a)(4) (Count III); and § 523(a)(6) (Count IV).  ColeMichael

contends that Burke's conduct, as alleged in the Dallas County Proceedings, meets the

requisite elements of non-dischargeability under § 523(a)(2)(A), (a)(4), and (a)(6), and this

conduct created the debt that is the subject of this dispute.

Burke filed his answer to ColeMichael's complaint on July 11, 2008.  On September

19, 2008, ColeMichael filed the instant motion for judgment on the pleadings.  ColeMichael

argues that the essential elements of each claim in its complaint have been established by the

Default Judgment and the Final Default Judgment entered by the Dallas County District

Court, the Contempt Orders of the Circuit Court of Cook County, and Burke's admissions

before the Circuit Court of Cook County.   Therefore, according to ColeMichael, Burke is

estopped from re-litigating issues conceded in those proceedings and there are no material

issues of fact for trial.

On October 24, 2008, Burke filed a response to ColeMichael's motion for judgment

on the pleadings.   Burke argues that the Final Default Judgment did not require a full and

fair litigation and therefore does not comply with collateral estoppel under Texas or Illinois

law.   Burke further argues that affirming the validity of a default judgment is not an

admission of guilt because a default judgment is not granted after a precise factual litigation

of the issues.  On November 7, 2008, ColeMichael filed a reply in support of its motion.

ColeMichael contends that Burke's acknowledgments of the validity of the Final Default

Judgment and his answer to the complaint are admissions of the allegations found in the first

amended original petition from the Dallas County Proceedings.  ColeMichael further argues

that Burke has fully and fairly litigated those issues, there is an identity of parties as well as

-13-

issues, and Burke should be estopped from re-litigating the issue of the dischargeability of

the debt reflected by the Final Default Judgment.


## III.  APPLICABLE STANDARDS

### A.    Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c), which is incorporated by reference in Federal

Rule of Bankruptcy Procedure 7012, permits a party to move for judgment after the parties

have filed the complaint and answer. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007); *N.*

*Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).  Rule

12 provides in relevant part as follows:

> (c) Motion for Judgment on the Pleadings.   After the
> pleadings are closed--but early enough not to delay trial--a
> party may move for judgment on the pleadings.
> (d) Result of Presenting Matters Outside the Pleadings. If, on
> a motion under . . . 12(c), matters outside the pleadings are
> presented to and not excluded by the court, the motion must
> be treated as one for summary judgment under Rule 56.  All
> parties must be given a reasonable opportunity to present all
> the material that is pertinent to the motion.

FED. R. CIV. P. 12(c) & (d).

"The pleadings include the complaint, the answer, and any written instruments

attached as exhibits."[1] *N. Ind. Gun*, 163 F.3d at 452.  The Seventh Circuit has interpreted

"the term 'written instrument' as used in Rule 10(c) to include documents such as affidavits

and letters, as well as contracts and loan documentation." *Id.* at 453 (footnote and citations

---

[1] Pursuant to Federal Rule of Civil Procedure 10, made applicable by Federal
Rule of Bankruptcy Procedure 7010, "[a] copy of a written instrument that is an exhibit to
a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c).

omitted).  When deciding a motion for judgment on the pleadings, a court may consider only the contents of the pleadings.  *Alexander v. City of Chi.*, 994 F.2d 333, 335 (7th Cir. 1993); *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812, 817 (Bankr. N.D. Ill. 1995).  However, courts may consider documents incorporated by reference in the pleadings.  *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).  Courts may also take judicial notice of matters of public record.  *Id.*

A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Id.* at 1581; *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989).  "Thus, it would appear that Rule 12(c) motions are subject to the retooled pleading standards announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, [550 U.S. 544] (2007)."  *Raymond Prof'l Group, Inc. v. William A. Pope Co. (In re Raymond Prof'l Group, Inc.)*, 386 B.R. 678, 681 (Bankr. N.D. Ill. 2008).  As Judge Schmetterer noted, the Seventh Circuit has not addressed the effect of the *Twombly* case on motions for judgment on the pleadings.  *Id.*  Under that standard, a complaint must provide notice of the claims and the grounds upon which they rest, and must contain sufficient allegations, based on more than speculation, to state a claim for relief that is plausible on its face.  *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (*citing Twombly*); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  Nevertheless, the Court need not reach that issue here because ColeMichael has not demonstrated that it is entitled to judgment as a matter of law.

"Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues

-15-

of fact to be resolved will a court grant a Rule 12(c) motion." *Bannon v. Univ. of Chi.*, 503 F.3d 623, 628 (7th Cir. 2007) (*quoting Moss*, 473 F.3d at 698). A moving party must unequivocally establish that no material issue of fact exists and that judgment on the pleadings is warranted by law. *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). *See also A.D.E. Inc. v. Louis Joliet Bank & Trust Co.*, 742 F.2d 395, 396 (7th Cir. 1984) (finding that judgment on the pleadings is appropriate only if it is a "certainty" that the defendant is liable).

For purposes of Rule 12(c) motions, all well-pleaded allegations contained in the non-moving party's pleadings are to be taken as true. *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989) (*citing Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 177 n.2 (7th Cir. 1986)). In ruling on a motion for judgment on the pleadings, courts must view the facts in pleadings and all inferences drawn therefrom in the light most favorable to the non-movant. *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *Nat'l Fid. Life Ins.*, 811 F.2d at 358 (*citing Republic Steel*, 785 F.2d at 177 n.2).

**B.    Collateral Estoppel**

The United States Supreme Court has held that collateral estoppel principles apply to proceedings involving the dischargeability of a debt under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Hence, "where a court of competent jurisdiction has previously ruled against a debtor upon specific issues of fact that independently comprise elements of a creditor's nondischargeability claim, the debtor may not seek to relitigate those underlying facts in bankruptcy court, provided that the issues

-16-

involved had been 'actually litigated.'" *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 663 (Bankr. N.D. Ill. 1998), *aff'd*, No. 99 C 6020, 2000 WL 226706 (N.D. Ill. Feb. 22, 2000), *aff'd*, No. 00-1720, 2001 WL 1313652 (7th Cir. Oct. 23, 2001). "In the Seventh Circuit, collateral estoppel can apply to cases in which a court hearing a nonbankruptcy case has determined factual issues relevant to a subsequent non-dischargeability claim, provided that the non-bankruptcy court used the same standards that a bankruptcy court would have used in determining the issues which are subsequently given collateral estoppel effect." *Katahn Assocs., Inc. v. Wien (In re Wien)*, 155 B.R. 479, 484 (Bankr. N.D. Ill. 1993). "Although Congress has vested jurisdiction to determine the dischargeability of debt in the bankruptcy court, it does not mean that every last fact issue bearing on dischargeability must be re-litigated, re-tried, and again decided when there has been a prior determination of the same facts by a court of competent jurisdiction." *Id.*

Federal courts must give full faith and credit to the collateral estoppel effects of state court judgments under state standards. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Am. Nat'l Bank & Trust Co. v. Reg'l Transp. Auth.*, 125 F.3d 420, 430 (7th Cir. 1997). Bankruptcy courts are bound by this obligation. *See Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994). "'[T]he preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law[.]'" *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (*quoting CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002)). Because this matter presents a question regarding the collateral estoppel effect of Texas state court orders and Illinois state court orders, the Court must apply the Texas and Illinois laws of collateral estoppel to the

-17-

Default Judgments and the Contempt Orders, respectively. *See In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004) ("The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment. . . .").

### 1. Collateral Estoppel Under Texas Law

Under Texas law, the following elements must be shown in order for collateral estoppel to apply in civil cases: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *In re Plunk*, 481 F.3d 302, 307 (5th Cir. 2007) (*quoting John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002)). Facts to be accorded preclusive effect under collateral estoppel must be fully and fairly litigated in the earlier action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Fact issues are "actually litigated" when they are properly raised by the pleadings, submitted for determination, and actually determined. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1203 (5th Cir. 1996). Collateral estoppel "will prevent a bankruptcy court from determining dischargeability issues for itself only if the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record." *Fielder v. King (In re King)*, 103 F.3d 17, 19 (5th Cir. 1997) (citation omitted).

Generally, a default judgment does not meet the "actually litigated" test for application of collateral estoppel. *See Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 680 (5th Cir. 1995); *Thompson v. Turner (In re Turner)*, 144 B.R. 47, 51-53 (Bankr. E.D. Tex.

-18-

1992). Texas courts follow the RESTATEMENT (SECOND) OF JUDGMENTS §27 (1982) in

determining when to allow issue preclusion. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d

816, 818 (Tex. 1984); *see also Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697

S.W.2d 381, 384 (Tex. 1985); *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928

(Tex. 1988); *Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989). "The

Restatement of Judgments further instructs that '[a]n issue is not actually litigated if . . . it

is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue

of a failure to deny) in a responsive pleading. . . . In the case of a judgment entered . . . by

default, none of the issues is actually litigated.'" *Gober*, 100 F.3d at 1204 (*citing*

RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982)).

### 2.     Collateral Estoppel Under Illinois Law

Under Illinois law, the essential elements for application of collateral estoppel are:

(1) the issue decided in the prior adjudication must be identical to the issue in the current

action; (2) the party against whom the estoppel is asserted must have been a party or in

privity with a party to the prior case; and (3) there must have been a final judgment on the

merits in the prior action. *Nowak v. St. Rita High School*, 757 N.E.2d 471, 478 (Ill. 2001);

*DuPage Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849 (Ill.

2001). In Illinois, collateral estoppel is "limited to the precise factual or legal issues actually

litigated and decided when a prior order was entered." *People v. Williams*, 563 N.E.2d 385,

392 (Ill. 1990). In applying the doctrine of collateral estoppel, courts are obliged to look at

the record with "realism and rationality" in order to determine which factual questions have

been decided. *People v. Ward*, 381 N.E.2d 256, 259 (Ill. 1978).

-19-

"Detailed findings of fact from the earlier proceeding are necessary to enable the

bankruptcy court to determine which issues were actually litigated in the earlier proceeding."

*Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 218 (Bankr. N.D. Ill.

1993). When a default judgment has been entered, as in the case at bar, the record rarely

reflects findings of facts sufficient to meet the requirement that the issue to be precluded has

been actually and necessarily litigated. *See Estate of Schubert v. Rudd (In re Rudd)*, 104 B.R.

8, 21 (Bankr. N.D. Ind. 1987). "In order for a previous judgment to be conclusive, it must

appear clearly and certainly that the identical and precise issue was decided in the previous

action. The party asserting collateral estoppel bears the burden of showing with clarity and

certainty what was determined by the prior judgment. This is a heavy burden of proof."

*Benton v. Smith*, 510 N.E.2d 952, 956 (Ill. App. Ct. 1987).

## C.     Exceptions to the Discharge of a Debt

The main purpose of a discharge in bankruptcy is to give a debtor a fresh start. *See*

*Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party seeking to

establish an exception to the discharge of a debt bears the burden of proof. *Goldberg Secs.,*

*Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *Banner Oil Co. v. Bryson*

*(In re Bryson)*, 187 B.R. 939, 957 (Bankr. N.D. Ill. 1995). The United States Supreme Court

has held that the burden of proof required to establish an exception to discharge is a

preponderance of the evidence. *Grogan*, 498 U.S. at 291. *See also In re McFarland*, 84 F.3d

943, 946 (7th Cir. 1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). Exceptions to

discharge are to be construed strictly against a creditor and liberally in favor of a debtor. *In*

*re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d

-20-

970, 972-73 (7th Cir. 1998); *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). "The statute

is narrowly construed so as not to undermine the Code's purpose of giving the honest but

unfortunate debtor a fresh start." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266

B.R. 686, 693 (Bankr. N.D. Ill. 2001). Section 523 of the Bankruptcy Code enumerates

specific, limited exceptions to the dischargeability of debts.

## 1.     11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–
>> (2) for money, property, services, or an
>> extension, renewal, or refinancing of credit, to
>> the extent obtained by–
>>> (A) false pretenses, a false
>>> representation, or actual fraud,
>>> other than a statement
>>> respecting the debtor's or an
>>> insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud,

false pretenses, and a false representation. *Id.*; *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R.

308, 314 (Bankr. N.D. Ill. 2001). Even though the elements for each exception vary under

common law, courts in the Seventh Circuit are required to apply a single test to all three

grounds. *Jairath*, 259 B.R. at 314. In order to except false pretenses or a false representation

from discharge under § 523(a)(2)(A), a creditor must establish the following elements: (1)

the debtor made a false representation of fact (2) which the debtor (a) either knew to be false

or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3)

-21-

the creditor justifiably relied on the false representation. *Baker Dev. Corp. v. Mulder (In re
Mulder)*, 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004); *Bednarsz v. Brzakala (In re Brzakala)*,
305 B.R. 705, 710 (Bankr. N.D. Ill. 2004). To prevail on a § 523(a)(2)(A) complaint, all
three elements must be established. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R.
346, 357 (Bankr. N.D. Ill. 2001). Failure to establish any one fact is outcome determinative.
*Jairath,* 259 B.R. at 314.

"Proof of intent to deceive is measured by the debtor's subjective intention at the time
the representation was made." *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R.
349, 356 (Bankr. N.D. Ill. 2004). "Where a person knowingly or recklessly makes false
representations which the person knows or should know will induce another to act, the finder
of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315.

Reliance on a false pretense or false representation under § 523(a)(2)(A) must be
"justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). The justifiable reliance standard
imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.*
at 70-72. Whether a party justifiably relies on a misrepresentation is determined by looking
at the circumstances of a particular case and the characteristics of a particular plaintiff, not
by an objective standard. *Id.* at 71; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278
B.R. 496, 508 (Bankr. N.D. Ill. 2002). To satisfy the reliance element of § 523(a)(2)(A), the
creditor must show that the debtor made a material misrepresentation that was the
cause-in-fact of the debt that the creditor wants excepted from discharge. *Mayer v. Spanel
Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir. 1995) ("Reliance means the conjunction
of a material misrepresentation with causation in fact."). "[A] person is justified in relying

-22-

on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (*quoting Field v. Mans*, 516 U.S. at 70).

The Seventh Circuit has made it clear that misrepresentation and reliance thereon are not always required to establish actual fraud. *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000). Indeed, the Seventh Circuit recently defined the term "fraud":

> 'Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'

*Id.* at 893 (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla.1952)).

"Actual fraud" is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* (internal quotation omitted). Hence, a different analysis must be utilized when a creditor alleges actual fraud. *Id.* The *McClellan* court opined that because common law fraud does not always take the form of a misrepresentation, a creditor need not allege misrepresentation and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). *Id.* Rather, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. *Id.* The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only actual ones. *Id.* at 894. "Though cases often say that

-23-

exclusions from dischargeability should be narrowly construed, we have emphasized that they 'serve vital functions.'" *Id.* at 893 (*quoting Mayer*, 51 F.3d at 674) (internal citations omitted). "'Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment.'" *Id.* (*quoting Mayer*, 51 F.3d at 674).

### 2.     11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The meaning of these terms is a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003). In order for a creditor to prevail under § 523(a)(4), it must prove that a debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. 11 U.S.C. § 523(a)(4).

The Seventh Circuit has found that a fiduciary relationship exists for purposes of § 523(a)(4) when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994); *see also In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) ("[S]ection 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge. . . ."). For example, a lawyer-client relationship, a director-shareholder relationship, and a managing partner-limited partner relationship all require the principal to "'repose a special confidence in the fiduciary.'" *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000) (*quoting Marchiando*, 13 F.3d at 1116). However, not all fiduciary relationships fall within the purview of § 523(a)(4). *Woldman*,

-24-

92 F.3d at 547. A fiduciary relation qualifies under § 523(a)(4) only if it "imposes real duties

in advance of the breach. . . ." *Marchiando*, 13 F.3d at 1116. In other words, the fiduciary's

obligation must exist prior to the alleged wrongdoing. *Id.*

### 3.    11 U.S.C. § 523(a)(6)

Section § 523(a)(6) of the Bankruptcy Code provides as follows:

> (a) A discharge under section 727 . . . of this title does not
> discharge an individual debtor from any debt–
> > (6) for willful and malicious injury by the
> > debtor to another entity or to the property of
> > another entity[.]

11 U.S.C. § 523(a)(6).

In order to be entitled to a determination of non-dischargeability of a debt under §

523(a)(6), a creditor must prove three elements by a preponderance of the evidence that (1)

that the debtor intended to and caused an injury to the credior's property interest; (2) that the

debtor's actions were willful; and (3) that the debtor's actions were malicious. *See Mulder*,

307 B.R. at 641; *Ardisson*, 272 B.R. at 356.

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that

nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or

intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Under

*Geiger* and its stringent standards, to satisfy the requirements of § 523(a)(6), a creditor must

plead and prove that the debtor actually intended to harm him and not merely that the debtor

acted intentionally and he was thus harmed. *See id.* at 61-62. In other words, the debtor

-25-

must have intended the tortious consequences of his act.  *See id.*; *see also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004).  Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6).  *Geiger*, 523 U.S. at 64.

The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct.  Recent decisions, however, have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required by *Geiger*.  *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463-65 (6th Cir. 1999); *Tex. By & Through Board of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 823 (5th Cir.1998); *Su v. Carrillo (In re Su)*, 259 B.R. 909, 913 (B.A.P. 9th Cir. 2001); *Fidelity Fin. Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000).  Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury.  *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002).

An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. . . ."  *Thirtyacre*, 36 F.3d at 700.  The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse.  *Paul*, 266 B.R. at 696.  A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious.  *Thirtyacre*, 36 F.3d at 700.  Whether an actor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact.  *Id.*

-26-

## IV. DISCUSSION

ColeMichael has the burden of establishing that the debt created by the Final Default Judgment was the result of fraud, fraudulent misrepresentations, or false pretenses under § 523(a)(2)(A), or arose from willful and malicious conduct under section § 523(a)(6), or that Burke committed fraud or defalcation while acting as a fiduciary, embezzlement or larceny under § 523(a)(4). ColeMichael has not established that all of the requisite elements are present to apply the doctrine of collateral estoppel to the Dallas County Final Default Judgment. Specifically, it cannot be determined whether the factual issues associated with finding a debt to be excepted from discharge under § 523(a)(2)(A), (a)(4), or (a)(6) were actually litigated and decided in the Dallas County Proceedings.

### A.    Dallas County Final Default Judgment

Under Texas law, before collateral estoppel will bar consideration of the issue, the facts sought to be litigated in the second action must have been fully and fairly litigated in the prior action. *Plunk*, 481 F.3d at 307. The Court has only been provided with the Default Judgments and ColeMichael's first amended original petition in the Dallas County Proceedings. The first amended original petition alleges nine counts against Burke and numerous other defendants on alternative theories of recovery including: breach of contract; accounting; fraud; fraudulent inducement; breach of fiduciary duty; legal malpractice; negligence; oppression of a minority venturer; and negligence per se. The elements that ColeMichael was required to prove in order to establish a right to relief under each count of the first amended original petition are distinctly different from each other.

-27-

The District Court of Dallas County never expressly ruled on any specific allegations in the first amended original petition but based its judgment on consideration of "the pleadings and evidence presented" and found "that Plaintiff ColeMichael is entitled to a default judgment against Defendant Burke in this cause and that all facts contained in Plaintiff's First Amended Original Petition are deemed admitted as to Defendant Burke." (Compl. Ex. No. 3 at p. 2.) The word fraud or misrepresentation was not used in either the Default Judgment or the Final Default Judgment, and the state court did not expressly find that Burke committed fraud or possessed the intent to defraud ColeMichael. The language of the Default Judgment does not conclusively indicate on what cause of action Burke's liability is based. The Final Default Judgment also falls short of establishing the elements of fraud required for Burke to be found liable under § 523(a)(2)(A). To conclude that Burke engaged in fraudulent conduct would require this Court to weigh the evidence and draw inferences from state court findings that are not expressly contained in the pleadings.

The Final Default Judgment reflects no specific factual finding that Burke was a fiduciary or that he committed larceny or embezzlement. The findings in the Final Default Judgment fall short of establishing that such a relationship existed or that Burke engaged in acts of either fraud or defalcation while acting within the capacity of a fiduciary. Additionally, the Texas court's findings do not indicate that an express trust was created. Hence, ColeMichael has not proven that the elements of § 523(a)(4) were actually litigated in the Final Default Judgment.

Finally, none of the findings made in the Texas Default Judgments comes close to proving that all of the elements required by § 523(a)(6) were actually decided. The Final

-28-

Default Judgment does not state that ColeMichael's injury arose out of a "willful" and "malicious" act of Burke, nor does it address whether his actions were intentional. To make such a determination based on the limited findings in the Dallas County Default Judgments, the Court would have to infer that Burke's actions were intentional (and not merely negligent or reckless), that he intended to injure the property interests of ColeMichael and cause it harm at the time of the wrongful conduct, and that Burke's actions were both willful and malicious.

ColeMichael has failed to demonstrate that the doctrine of collateral estoppel applies with respect to the Final Default Judgment and the factual allegations found in the first amended original petition. As such, material questions of fact are still in dispute as to the dischargeability of the debt created by the Final Default Judgment. An independent determination is required to ascertain whether Burke's conduct, as alleged in the first amended original petition, meets the requisite elements for a finding of non-dischargeability under § 523.

### B.    Cook County Proceedings

ColeMichael additionally argues that because Burke admitted to the validity and enforceability of the Final Default Judgment in the Cook County Proceedings, and his answer acknowledges those admissions, he has conceded to inherent findings of fraud and breach of fiduciary duty in the Dallas County Proceedings. While Burke has admitted to the validity and enforceability of the Final Default Judgment, he did not admit to the factual allegations in the first amended original petition. This Court has determined that the Final Default Judgment is not entitled to collateral estoppel effect under Texas law, and the issues alleged

-29-

in the first amended original petition were not conclusively determined in the Dallas County Proceedings.    Therefore, Burke's admissions alone do not establish the elements of ColeMichael's non-dischargeability claims under § 523.

Finally, ColeMichael argues that the findings of the Circuit Court of Cook County in the Contempt Orders compel a finding of non-dischargeability under § 523. The Court finds, however, that the pleadings do not demonstrate that all of the elements of collateral estoppel have been met as to the Illinois state court Contempt Orders.

Under Illinois law, in order for collateral estoppel to apply, a final judgment on the merits is required. *Nowak*, 757 N.E.2d at 478. There was no final judgment on the merits in the Cook County Proceedings. In its Memorandum Decision and Order issued on October 21, 2004, the Circuit Court of Cook County found that "[t]he Citation to Discover Assets remains pending." (Compl. Ex. No. 9 at ¶ 5.) Additionally, the state court ordered Burke "to pay all reasonable attorneys' fees and expenses incurred by ColeMichael in these enforcement proceedings since May 31, 2000, in an amount to be determined at a subsequent hearing upon ColeMichael's petition[.]" (*Id.* at p. 29 ¶ 4.) The court did not order Burke to pay anything to ColeMichael representing Burke's indebtedness on the Final Default Judgment and the Cook County Proceedings were continued at the time. There is no evidence to suggest that a settlement or final judgment was reached regarding ColeMichael's interest in the Final Default Judgment.

Further, under Illinois law, "it must appear clearly and certainly that the identical and precise issue was decided in the previous action." *Benton*, 510 N.E.2d at 956. In its Memorandum Decision and Order, the Circuit Court of Cook County found only that "[o]n

-30-

March 11, 1999, the District Court of Dallas County, Texas, entered final judgment against Burke and in favor of ColeMichael in an ex-parte proceeding in the amount of $21,178,261.00. . . . Before this Court, Burke has conceded the validity and enforceability of this Judgment." (Compl. Ex. No. 9 at ¶ 2.) The Cook County Circuit Court did not make any additional findings as to the Final Default Judgment or the facts and issues involved in the Dallas County Proceedings. The pleadings do not demonstrate that there was a precise identity of issues between the Contempt Orders and the dischargeability of debt created by the Final Default Judgment. Thus, material issues of fact exist as to whether the findings of the Circuit Court of Cook County establish the elements for determining the dischargeability of the debt at issue. Therefore, ColeMichael's motion for judgment on the pleadings is denied because not all of the requisite elements are present to apply the doctrine of collateral estoppel to the Texas state court Final Default Judgment or the Illinois state court Contempt Orders. The Court finds that the doctrine of collateral estoppel does not afford ColeMichael entitlement to judgment on the pleadings pursuant to § 523(a)(2)(A), (a)(4), or (a)(6).

## V. **CONCLUSION**

For the foregoing reasons, the Court denies ColeMichael's motion for judgment on the pleadings.

-31-

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _12/18/8_

John H. Squires
United States Bankruptcy Judge

cc:  See attached Service List

## SERVICE LIST

### ColeMichael Investments, LLC v. Barry E. Burke
### Adversary Case No. 08 A 00252

Tracey L. Wolfe, Esq.
DeGrand & Wolfe, P.C.
20 S. Clark Street, Suite 2620
Chicago, IL 60603

Thomas N. Auwers, Esq.
Heller & Richmond, Ltd.
33 N. Deaborn Street, Suite 1600
Chicago, IL 60602

David R. Brown, Esq.
Springer, Brown, Covey, Gaertner & Davis
400 S. County Farm Road, Suite 330
Wheaton, IL 60187

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604